KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
David M. Friedman (DF-4278)
Joseph A. Gershman (JG-8275)
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800

*Counsel to Plaintiff Adelphia Recovery Trust*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>ADELPHIA COMMUNICATIONS CORP., *et al.*,<br>a Delaware corporation,<br><br>   Debtors. | Chapter 11 Case<br>Case No. 02-41729 (REG) |
| ADELPHIA RECOVERY TRUST,<br><br>   Plaintiff,<br> v.<br><br>PRESTIGE COMMUNICATIONS OF NC, INC., *et al.*,<br><br>   Defendants. | CIVIL ACTION FILE<br>NO. 07 CIV 11152 (LMM) |
| ADELPHIA RECOVERY TRUST,<br><br>   Plaintiff,<br> v.<br><br>FPL GROUP, INC., *et al.*,<br><br>   Defendants. | CIVIL ACTION FILE<br>NO. 07 CIV 11153 (LMM) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
MOTION TO WITHDRAW THE REFERENCE**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

I.    THE MOTION IS TIMELY..............................................................................................2

II.   THE MOTION SATISFIES THE REQUIREMENTS FOR PERMISSIVE
      WITHDRAWAL................................................................................................................6

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*In re Adelphia Communs. Corp. Sec. & Derivative Litig.*,
2006 U.S. Dist. LEXIS 8700 (S.D.N.Y. Feb. 19, 2006) ...................................................2, 3, 6, 7

*American Community Services, Inc. v. Wright Marketing, Inc.*,
86 B.R. 681 (Bankr. D. Utah 1988) ........................................................................................6

*Boudle v. CMI Network, Inc.*,
2007 U.S. Dist. LEXIS 82336 (E.D.N.Y. Nov. 6, 2007)..........................................................5-6

*Burger King Corp. v. B-K of Kansas, Inc.*,
64 B.R. 728 (D. Kan. 1986) ..................................................................................................2, 4

*Interconnect Telephone Services, Inc. v. Farren*,
59 B.R. 397 (S.D.N.Y. 1986) ................................................................................................2

*LTV Steel Co., Inc., v. City of Buffalo (In re Chateaugay Corp.)*,
2002 U.S. Dist. LEXIS 5318 (S.D.N.Y. Mar. 29, 2002) .........................................................6, 7

*Mishkin v. Ageloff (In re Adler, Coleman Clearing Corp.)*,
270 B.R. 562 (S.D.N.Y. 2001) ...............................................................................................7

*Mishkin v. Ageloff*,
220 B.R. 784 (S.D.N.Y. 1998) ...............................................................................................6

*Pan Am Corp. v. Delta Air Lines (In re Pan Am Corp.)*,
163 B.R. 41 (S.D.N.Y. 1993) .................................................................................................7

*In re Texaco*,
84 B.R. 911 (Bankr. S.D.N.Y. 1988).....................................................................................4, 5

*United States v. Kaplan*,
146 B.R. 500 (D. Mass. 1992) ...............................................................................................5

*Wedtech Corp v. London (In re Wedtech Corp.)*,
81 B.R. 237 (S.D.N.Y. 1987) .................................................................................................7

**Statutes**

11 USCS § 546 (a) ..................................................................................................................3

28 U.S.C. § 157(d) ..................................................................................................................5

## **PRELIMINARY STATEMENT**

The Defendants in the Prestige and FPL Cases[1] oppose the Motion to Withdraw the Reference (the "Motion") but fail to rebut any of the reasons which compel withdrawal. They concede that there are overlapping factual and legal issues between those cases and the Bank Case. They concede that all of the cases were originally filed in the same court before the same judge. And, they concede that all three cases are now currently scheduled to go to trial at virtually the same time before three different judges who may come to different conclusions on the same or similar issues. As demonstrated below, the Prestige and FPL Defendants' opposition papers -- which assert that the Motion is not timely and will not serve the interests of judicial efficiency -- lack merit and, significantly, do not demonstrate any prejudice to those Defendants from withdrawal of the reference. Indeed, both the Prestige and FPL Cases are still in the discovery stage, as neither Judge Morris nor Judge Gerber have issued any rulings on dispositive motions or otherwise addressed to the merits of the cases, and this Court can administer all three cases in a manner that avoids inefficiencies and protects the rights of all parties.

While the Prestige and FPL Defendants raise a number of objections to the Motion, they do not dispute that the factors of efficiency and uniformity are the most important factors in a permissive withdrawal analysis. That concession is fatal to their opposition. Because of the substantial overlap among the three cases, consolidating all three cases in the District Court will facilitate the coordination of these overlapping cases. Defendants do not deny that withdrawal of the reference will avoid the inefficiency of multiple judges devoting time to the resolution of the same issues and eliminate the risk of inconsistent rulings. Accordingly, the Motion should be granted.

---

[1] Capitalized terms used throughout are defined in the Motion to the Withdraw the Reference, dated December 3, 2007.

## I.
## THE MOTION IS TIMELY

Defendants' argument that the Motion is not timely because it was made long after the Prestige and FPL Cases were filed (Prestige Br. at 9; FPL Br. at 6)[2] is unpersuasive. First, as the Defendants concede, there is no time limit for a motion to withdraw the reference. Rather, timeliness is determined by the particular facts of the case and a motion is timely as long as it is made within a reasonable time after the grounds giving rise to withdrawal become apparent. *See, e.g., In re Adelphia Communs. Corp. Sec. & Derivative Litig.*, ("*Adelphia*" or the "Withdrawal Decision") 2006 U.S. Dist. LEXIS 8700 (S.D.N.Y. Feb. 9, 2006) (motion was timely even though filed over two years after complaint was filed); *Interconnect Telephone Services, Inc. v. Farren*, 59 B.R. 397 (S.D.N.Y. 1986) (motion was timely even though filed one year after case was commenced and after discovery and motion to dismiss); *Burger King Corp. v. B-K of Kansas, Inc.*, 64 B.R. 728, 730-1 (D. Kan. 1986) (motion was timely even though made almost a year after complaint was filed). Here, the Motion was filed as soon it became apparent that the three cases were on a parallel track and it was no longer tenable to have the three cases running simultaneously in three different venues.

Defendants' claim that there was always the potential for factual and legal overlap between the Prestige and FPL Cases and the Bank Case (Prestige Br. at 9; FPL Br. at 6) misses the point. It was not the potential for overlap that prompted the Motion. Rather, it was the *virtual certainty* of overlap created by the juxtaposition of three scheduling orders which effectively dictated that identical depositions, discovery issues, motion practice, expert testimony, and factual adjudications would take place simultaneously in three different courts.

---

[2] Prestige Defendants' Brief in Opposition to Motion to Withdraw the Reference and corresponding exhibits, dated December 17, 2007 is referred to herein as ("Prestige Br."); FPL Group, Inc.'s and West Boca Security Inc.'s Memorandum in Opposition to Motion to Withdraw the Reference and corresponding exhibits, dated December 17, 2007 is referred to herein as ("FPL Br.").

2

Defendants do not -- because they cannot -- deny that it was only recently that the three cases converged on each other as a result of those scheduling orders -- FPL Sixth Amended Scheduling Order was filed on November 21, 2007, and so ordered on December 3, 2007, Prestige Fifth Amended Scheduling Order was so ordered on October 30, 2007, Bank Litigation Endorsed Letter from Judge McKenna outlining Discovery Phases was entered on October 24, 2007 (Gershman Reply Decl. ("Gersh. Decl.") Exhibits 1-3) -- and that the Trust made its Motion as soon as it became apparent that it would be almost impossible, and incredibly inefficient, for the three cases to proceed on the same timetable in three separate courts.[3]

Second, the Prestige Defendants' suggestion that the Motion was belatedly filed to delay the resolution of the Prestige Case is belied by the very facts recited in the opposition. While the Prestige Case was filed in June 2004 (in accordance with the statutory mandates of section 546(a) of the Bankruptcy Code), it was essentially inactive for its first eighteen months. Thereafter, Judge Morris assumed control of the case but it was nonetheless subject to a stay until September of 2006. (Gersh. Decl. ¶ 4) It is only since that time that the case has progressed and then only as to the resolution of a handful of discovery disputes and a contested motion to amend the complaint. Each side has won some and lost some of these minor skirmishes and it is preposterous to suggest, as the Prestige Defendants have, that any of Judge Morris' rulings has inspired the motion. Indeed, Judge Morris granted the Trust's Motion to Amend the Complaint over Defendants' objection (Gersh. Decl. Exhibit 4), partially granted the Trust's request to limit the Defendants' 30(b)(6) topics by striking one topic entirely during a telephone conference with the parties, and by ordering the parties to confer to further limit the scope of the topics (Prestige Br. Ex. G; Gersh. Decl. ¶ 5) and partially granted the Trust's Motion

---

[3] For this reason, the Prestige Defendants' attempt to distinguish this Court's ruling in *Adelphia* fails. In both cases, there were events that occurred well after the cases were commenced that warranted the filing of a motion at a later date. In *Adelphia*, this Court held that the Bankruptcy Court's standing decision (2 ½ years after the case was filed) was the proper point from which to measure timeliness. *See Adelphia*, 2006 U.S. Dist. LEXIS 8700, at *11. Here, the proper point to measure timeliness is the dates when these scheduling orders were entered.

to Compel the Prestige Defendants to produce documents withheld pursuant to claims of privilege (Prestige Br. Ex. H).[4]  The critical point, however, is that the way to best determine "timeliness" is to consider whether withdrawal visits any prejudice upon the non-moving party. *Burger King*, 64 B.R. at 730.  Because withdrawal of the reference does not prejudice the Defendants in either the Prestige or FPL Cases, the Motion is timely.[5]

Third, this is not the "eleventh hour" as Defendants suggest.  While some discovery has taken place in the Prestige and FPL Cases, there is still much work that needs to be done and the cases are over a year away from trial.  For example, in the Prestige Case there are 17 depositions that have been noticed and yet to be taken, and there are likely to be more.  (Gersh. Decl. ¶ 6)  The Prestige Defendants have sought the depositions of at least five more fact witnesses who were formerly employed by Adelphia.[6]  (Gersh. Decl. ¶ 7)  The majority of the Prestige Defendants have not yet been deposed, which will entail at least another six depositions.[7] (Gersh. Decl. ¶ 8)  There are another six third party depositions that remain to be taken.[8]  (Gersh. Decl. ¶ 9)  Moreover, neither Plaintiff nor Defendants has waived the right to recall witnesses who have already been deposed to give further testimony.  (Gersh. Decl. ¶ 10)  Furthermore, document discovery is ongoing and Plaintiff has not yet served contention interrogatories. (Gersh. Decl. ¶ 11)  It is highly unlikely that seventeen or more depositions and all document discovery will be completed in the near future.  In the FPL Case, the Defendants have only

---

[4] While the Prestige Defendants note that Judge Morris awarded sanctions to them for an alleged failure by plaintiff to produce documents, that Order was entered without a hearing, and the Trust has filed a motion to vacate that order as Judge Morris ruled that the withheld documents which were the basis for the motion were not actually relevant and need not be produced.

[5] The Prestige Defendants' reliance on *In re Texaco*, 84 B.R. 911 (Bankr. S.D.N.Y. 1988) -- for the proposition that an untimely motion must be denied without considering its merit -- is misplaced because that case actually says the opposite. *Texaco* stated that timeliness cannot be considered in a vacuum and held that the motion was timely despite a delay of many months because the party opposing the motion was not prejudiced by the delay. *Id.* at 919-21.

[6] These include Tony Naes, Paul Quinn, Marc Chambers, Dennis Coyle and Rod Cornelius.

[7] These include Anverse, Earline Holmes, Buckfelder Investment Trust, Prestige Communications, Inc., Jon Oscher and Lorraine Oscher McClain.

[8] These include Paul Barnes, Stephanie Gill, P.J. Charlton, and three Price Waterhouse Coopers witnesses; Thomas Pickette, Edward Choi and Thomas Garrett.

served one set of limited formal document requests and interrogatories, there have been no depositions noticed or taken, there have been no dispositive motions filed, no interrogatories have been served, and the parties have only exchanged preliminary document productions. (Gersh. Decl. ¶ 12)

Although the Prestige Defendants point out that the latest scheduling order in the Prestige Case has a fact discovery cut-off of March 15, 2008, the discovery schedule is not set in stone. In fact, it has already been amended five times, and given the number depositions outstanding, may need to be amended again.[9] Moreover, expert discovery has not begun in either the Prestige or FPL Cases and trial is more than a year away under the current scheduling orders in both cases. In fact, the Prestige Defendants recently filed a pleading seeking to stay expert discovery which will likely cause a trial to be delayed even further.[10]

Fourth, Adelphia's Plan of Reorganization has been confirmed and the resolution of the case will not have any impact on the reorganization process. As pointed out by the court in a case relied upon by the Prestige Defendants, *In re Texaco*, 84 B.R. 911, 919 (Bankr. S.D.N.Y. 1998), the "court must take into consideration the status of and the effect such a motion has on the bankruptcy proceedings . . . and [when the non-movants] are not prejudiced by such a delay then a motion is not considered untimely." As the reorganization plan has already been confirmed, withdrawal of the reference will not adversely impact the bankruptcy proceedings and will not prejudice the Defendants.

Fifth, even assuming *arguendo* that the Court were to conclude that the motion is untimely, that does not preclude withdrawal of the reference because the Court has the power

---

[9] Nor has plaintiff been the cause of the delay. It was the Prestige Defendants who requested the Fourth and Fifth Amended Scheduling Orders, which extended the deadlines for the completion of fact discovery and all the other deadlines. Moreover, the Prestige Defendants adjourned Adelphia's primary 30(b)(6) deposition four times. Furthermore, while the Prestige Defendants told Plaintiff and the Court that they would move for summary judgment immediately after Adelphia's 30(b)(6) deposition, but then did not do so and instead served three additional document requests and 16 additional deposition notices.

[10] This case is thus nothing like *United States v. Kaplan*, 146 B.R. 500 (D. Mass. 1992), relied on by Prestige where the motion was filed with only two weeks of discovery remaining and trial scheduled to begin shortly thereafter.

5

under 28 U.S.C. Section 157(d) to withdraw the reference *sua sponte*. *See Boudle v. CMI Network, Inc.*, 2007 U.S. Dist. LEXIS 82336, at *20 (E.D.N.Y. Nov. 6, 2007) (noting that if there was a question as to whether the party requesting withdrawal of the reference had standing to seek the relief, the court would withdraw the reference *sua sponte*); *American Community Services, Inc. v. Wright Marketing, Inc.*, 86 B.R. 681, 682 (D. Utah 1988) (withdrawing the reference *sua sponte*). Accordingly, the Motion is timely, but even if it were not, the alleged untimeliness of the Motion is no bar to withdrawal of the reference.

## II.
## THE MOTION SATISFIES THE REQUIREMENTS
## FOR PERMISSIVE WITHDRAWAL

In the Motion, the Trust demonstrated that the interests of efficiency and uniformity are best served by consolidating the Prestige and FPL Cases with the Bank Case already pending in the District Court, and there are no negative consequences of doing so. (Motion at 10-11) The Defendants' arguments to the contrary have no merit.

First, they argue that there is no cause for withdrawal because the claims are "core." However, as this Court ruled in the Withdrawal Decision, whether a claim is core is not determinative. *See Adelphia*, 2006 U.S. Dist. LEXIS 8700, at *14 n.5. Equally, if not more, important are the factors of efficiency and uniformity, which weigh heavily in favor of withdrawal. *See LTV Steel Co., Inc., v. City of Buffalo (In re Chateaugay Corp.)*, 2002 U.S. Dist. LEXIS 5318, at *18 (S.D.N.Y. Mar. 29, 2002) (holding that permissive withdrawal was appropriate even when action was core because core/non core analysis was not dispositive, but rather **"in the final analysis, the critical question is efficiency and uniformity."**) (emphasis added) (*quoting Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D.N.Y. 1998)). Moreover, the Prestige Case has core claims (fraudulent conveyance) and non-core claims (aiding and abetting breach of fiduciary duty). That is consistent with the Bank Case, which also has core (fraudulent

6

conveyance) and non-core (aiding and abetting) claims, and this Court withdrew the reference of the Bank Case. *See Adelphia* 2006 U.S. Dist. LEXIS 8700, at *21-22. Contrary to the suggestion of the Prestige Defendants, the aiding and abetting claim is not a "tack-on" claim that has core status. Defendants have forced the Trust to produce millions of documents and have sought to depose approximately twenty people concerning the aiding and abetting claim, which seeks approximately three times the damages of the fraudulent conveyance claims. The Prestige Defendants' "tack-on theory" is utterly devoid of factual or legal support. In the FPL Case, the fraudulent conveyance claim is a core claim, but Adelphia's Plan of Reorganization has been confirmed and the resolution of the case will not have any impact on the reorganization process.

Second, Defendants' judicial economy arguments are specious. The Prestige Defendants cite *Mishkin v. Ageloff (In re Adler, Coleman Clearing Corp.)("Adler")*, 270 B.R. 562, 566 (S.D.N.Y. 2001) for the proposition that the bankruptcy judge is the most familiar jurist and the person in the best position to oversee the cases. (Prestige Br. pp. 20-21.) But that would militate only in favor of Judge Gerber, as he is the one with familiarity from overseeing the whole Adelphia bankruptcy case, not Judge Morris. Furthermore, in *Adler*, the court just gave the Bankruptcy Court authority through pre-trial procedures -- it still contemplated withdrawal at a later date. *Adler*, 270 B.R. at 566. Here, with two other overlapping cases, the *Adler* court would almost certainly have opted to withdraw the reference now. Defendants have no answer for, and completely ignore, the cases cited in the Motion where courts held that withdrawal was appropriate in circumstances similar to those here. *See Motion* pp. 12-13, citing *LTV Steel*, 2002 U.S. Dist. LEXIS 5318, at *17; *Wedtech Corp v. London (In re Wedtech Corp.)*, 81 B.R. 237 (S.D.N.Y. 1987); *Pan Am Corp. v. Delta Air Lines (In re Pan Am Corp.)*, 163 B.R. 41, 43-44 (S.D.N.Y. 1993).

Moreover, the Prestige Defendants overstate Judge Morris' involvement in the case to date. While Judge Morris has ruled on a number of discovery disputes, she has yet to issue any

significant rulings on any substantive issue. The only time Judge Morris has touched on substantive issues was on the Trust's Motion to Amend, which the Prestige Defendants opposed on, among other things, futility grounds, and she ruled in favor of the Trust. (Gersh. Decl. Exhibit 4) The Prestige Defendants did not file a motion to dismiss the original complaint, did not file a motion to dismiss the amended complaint, and have not filed a motion for summary judgment, as they promised to do after Constance Campbell's deposition in July 2007. (Gersh. Decl. ¶ 13) Indeed, had they moved to dismiss or for summary judgment and raised issues concerning the viability of the aiding and abetting claim or the *in pari delicto* doctrine earlier -- instead of saving them for a recently announced planned partial summary judgment motion -- it is likely that the Trust would have sought withdrawal earlier, as those issues were also pending before Judge Gerber and are presently on appeal to this Court.

Third, the Prestige Defendants argue that there is no material overlap between the cases. They do so by raising the numerous complexities that are unique to the Bank Litigation. But this misses the point. Whatever issues exist that are singularly present in the Bank Litigation does not detract from the numerous threshold issues that the cases collectively share. Plainly, the opponents cannot contest that there are many overlapping factual issues[11] and numerous overlapping legal issues.[12] Even the FPL Defendants admit the substantial overlap between the Bank Case and the Prestige Case. (FPL Br. at 6) Defendants' arguments that the solvency analysis does not overlap because the dates of the transactions at issue are not identical, and the

---

[11] These include: (1) whether certain of the Debtors were insolvent during the time period 1999 – 2000 (which itself invokes numerous valuation issues); (2) whether certain of the Debtors had unreasonably small capital during the time period 1999 – 2000; (3) what the Independent Directors knew, if anything, about the fraudulent actions and breaches of fiduciary perpetrated by the Rigas Family in connection with the challenged transactions, and the state of Adelphia's finances; (4) the factual (and legal) significance and interpretation of Adelphia's accounting restatement; and (5) what damages, if any, were suffered by Adelphia in connection with the various challenged transactions.

[12] These include (1) whether aiding and abetting breach of fiduciary duty is a valid claim under Pennsylvania law; (2) the effect, if any, of the Debtors' settlement with the United States Government on the claims the Trust is asserting in the Bank and Prestige Cases; (3) whether the Rigas Family's co-borrowing debt, various intercompany obligations, alter ego or veil-piercing claims and other contingent liabilities should be included as liabilities on Adelphia's balance sheet; (4) the effect, if any, of the settlement of Adelphia's lawsuit against Deloitte & Touche on the Bank and Prestige Cases; and (5) the application, if at all, of various alleged equitable defenses, including the *in pari delicto* doctrine.

legal entities sometimes differ, ignores the numerous valuation and accounting issues that will be litigated in each instance such as the effect of the Restatement, the proper treatment of contingent assets and liabilities and the appropriate expert methodologies. The FPL Defendants argument that there is no overlap between the FPL Case and the Bank Case because the valuation date in the FPL Case is four months prior to the relevant valuation date in the Bank Case (id. at 4.) also ignores the fact that courts often look at values before and after specific valuation dates to make a determination as to value. The financial discovery and expert opinions in the two cases will clearly overlap despite a relatively small difference in the valuation dates.

The Prestige Defendants' suggestion that there is currently only one overlapping discovery issue -- their request for the reports of Adelphia's experts in the Deloitte case -- is not true. In fact, each and every one of the Defendants' seven document requests contains requests which overlap with the Bank Case including, with respect to (1) Adelphia's insolvency; (2) documents relating to the sale of Adelphia and the attendant valuations and appraisal of assets; (3) Adelphia and its subsidiary's income statements and balance sheet information; (4) financial documents relating to the CCH facility; (5) income statements for cost centers through the date of the closing of the sale with Time Warner and Comcast, (6) expert reports filed on behalf of Adelphia, Deloitte & Touche and the Rigas Family in the Deloitte litigation, and (7) Adelphia's federal tax returns filed in 2000 and 2006. (Gersh. Decl. ¶ 14) Similarly, during depositions, the Prestige Defendants repeatedly ask witnesses questions regarding: (1) the Restatement; (2) Adelphia's financial condition generally; (3) the Covington & Burling Report; (4) the work of the Special Committee; (5) the Independent Director's knowledge of the Rigas fraud; (6) the co-borrowing agreements and (7) the "Super 10-K" and other SEC filings. (Gersh. Decl. ¶ 15) Even accepting the Prestige Defendants' claim that their sudden request for the Deloitte expert materials, which the banks are seeking to compel in the Bank Case, was not the result of a "coordinated litigation strategy" with the banks, this dispute is merely one example of the many

9

disputes that overlap, and it makes no sense to litigate such disputes three separate times in three separate courts now that the cases are on the same timetable.

In sum, the overlap between the Bank Case and the Prestige and FPL Cases is even stronger than the overlap between the Bank Case and the MDL Case that informed the Prior Withdrawal Decision. In contrast to the facts underlying the Prior Withdrawal Decision, on the instant motion the plaintiff in all three relevant cases is *identical;* many of the factual issues are *identical;* many of the legal issues are *identical*; and the trial schedules (which had not even been set in connection with the cases subject to the Prior Withdrawal Decision) are virtually *identical*. Withdrawal of the Adversary Proceedings is thus mandated with great force under the reasoning of the Prior Withdrawal Decision.

## CONCLUSION

For the foregoing reasons, the Court should grant the Trust's motion and withdraw the reference for the Prestige and FPL Cases, and grant such other and further relief in favor of the Trust as the Court finds just and proper.

Dated: New York, New York
       December 24, 2007

                Respectfully submitted,

                KASOWITZ, BENSON, TORRES
                & FRIEDMAN LLP

By:   /s/ David M. Friedman
       David M. Friedman (DF-4278)
       Joseph A. Gershman (JG-8275)
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800

Counsel to Plaintiff Adelphia Recovery Trust